## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NERI'S BAKERY PRODUCTS, INC.,

Plaintiff,

v.

J.J. CASSONE BAKERY, INC.,

Defendant.

**'10 CIV 01183**

Civil Action No.:

**JURY TRIAL DEMANDED**

JUDGE SEIBEL

### COMPLAINT

Plaintiff Neri's Bakery Products, Inc. ("Neri's Bakery" or "Plaintiff") brings this civil antitrust action against Defendant J.J. Cassone Bakery, Inc. ("Cassone" or "Defendant") under the antitrust laws of the United States. For its complaint, upon knowledge as to Neri's Bakery and otherwise upon information and belief, Neri's Bakery alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil antitrust action alleging anticompetitive conduct on the part of Defendant Cassone and its co-conspirator 41 Pearl Street Holding Company ("41 Pearl Street"), including an illegal conspiracy to restrain trade, a conspiracy to monopolize, and attempted monopolization in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2.

2.     Neri's Bakery and Cassone are competing manufacturers of Italian Breads (as defined below), both located in Port Chester, New York, near the New York

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

Connecticut border. They have competed with each other, and with others, in the New York-Connecticut market for Italian Breads (as defined below) for many years.

3.    Cassone is the dominant competitor in this market, controlling approximately sixty percent of sales. Neri's Bakery competes with Cassone by providing products to approximately ten to fifteen percent of the Italian Breads market.

4.    In an effort to force Neri's Bakery to exit the Italian Breads market and to interfere with the expansion of Plaintiff's operations, Cassone embarked on a scheme to prevent Neri's Bakery from acquiring a specific parcel of land situated directly between its existing facilities. Cassone purchased the only available piece of land (the "Premises") located in the middle of Plaintiff's operations. Cassone then agreed with 41 Pearl Street to burden the Premises with a restrictive covenant precluding anyone from operating a bakery at the location. Finally, Cassone re-sold the Premises to 41 Pearl Street, which sold it to Neri's Bakery.

5.    The sole purpose of this scheme was and is to impede competition from Neri's Bakery. Purchasing land in the middle of Plaintiff's operations and burdening that land with a restrictive covenant was designed to raise Plaintiff's costs and prevent it from expanding its operations. Rising costs and impediments to expansion would force Neri's Bakery to exit the Italian Breads market that Cassone, with the help of 41 Pearl Street, seeks to monopolize. Cassone had no legitimate purpose for purchasing this land, nor for agreeing with 41 Pearl Street to create and enforce the restrictive covenant, and indeed incurred substantial costs as a result of this scheme. The only reason that Cassone incurred the costs was because it knew that it would recoup these costs many times over

2

in profits due to higher bread prices, which would result from improperly and illegally restricting output and competition from Neri's Bakery.

6.    In addition to enforcing the restrictive covenant, Cassone attempted to leverage it to coerce Neri's Bakery into an illegal market allocation scheme in which Neri's Bakery would agree to cede the regional Italian Breads market to Cassone. Had Neri's Bakery agreed to this scheme, which would have been a felony violation of the Sherman Act, Cassone would have near complete monopoly power in the regional Italian Breads market.

## JURISDICTION AND VENUE

7.    This complaint arises under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and seeks injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, declaratory relief under 28 U.S.C. §§ 2201 and 2202, and damages under Section 4 of the Clayton Act, 15 U.S.C. § 15. This Court has jurisdiction over these federal antitrust claims pursuant to 28 U.S.C. §§ 1331 and 1337(a).

8.    Venue is proper in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Defendant transacts business and is found within this District, and a substantial part of the facts underlying this litigation occurred within this District. The acts complained of have, and will continue to have, substantial effects in this District.

## THE PARTIES

9.    Plaintiff Neri's Bakery Products, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 31-37 Pearl Street, Port Chester, New York 10573. Neri's Bakery is a 100-year old, fourth-generation family business. It offers an array of bakery products, including Italian

3

Breads, rolls, bagels, muffins, pastries, and flat breads. Neri's Bakery provides a minority share of products in the market for Italian Breads.

10.    Defendant J.J. Cassone Bakery, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business at 202 South Regent Street, Port Chester, New York 10573. It is the dominant supplier in the Italian Breads market, controlling approximately sixty percent of the New York-Connecticut Italian Breads market (as defined below).

## INTERSTATE TRADE AND COMMERCE

11.    Defendant Cassone, through the production and sale of Italian Breads within the New York-Connecticut market (as defined in paragraph 18), is engaged in interstate commerce. Cassone's unlawful activities as described herein occurred in, and have directly, substantially, and reasonably foreseeably affected interstate commerce.

## INJURY TO CONSUMER WELFARE AND COMPETITION

12.    Defendant Cassone's and 41 Pearl Street's anticompetitive conduct has the direct, intended and reasonably foreseeable effect of reducing output in the Italian Breads market and reduces consumer welfare and/or results in a transfer of wealth from consumers to Cassone in that:

(i)    actual and potential competition in the market for Italian Breads has been, and will continue to be, limited, reduced, restrained, suppressed, and substantially foreclosed;

(ii)    instead of free, open, and competitive markets for Italian Breads, a dominant position dangerously likely to become a monopoly has been established and maintained;

(iii)    Neri's Bakery will be effectively foreclosed from competing on the merits to the fullest extent possible in the market for Italian Breads, and will be injured in its business and property;

(iv)    jobbers, distributors, and other customers, as well as ultimate consumers, have paid, and will pay in the future, artificially inflated and supra-competitive prices for Italian Breads; and

(v)    jobbers, distributors, and other customers, as well as ultimate consumers have been, and will be, deprived of a free, open, competitive, and unrestrained market for Italian Breads.

## RELEVANT MARKET

13.    The relevant market consists of the relevant product market and the relevant geographic market.

14.    The relevant product market in which the restraints and other anticompetitive conduct alleged in this complaint have had, will continue to have, and are likely to have an anticompetitive effect is the market for Italian Breads, including Italian dinner rolls, Italian white bread, Italian wheat bread, Italian flat bread, Panelle, Shockotan seeded bread, Bastoni bread, various Tuscan breads, and other unsweetened, yeast-raised breads.

15.    There are significant differences in customer preferences and demand between Italian Breads and other types of breads and bakery products.  Consumer preferences for specific types of breads vary greatly depending on, for example, the consumers' cultural and ethnic background, traditions, habits, taste, and health concerns, and the products' nutritional value and caloric content.  The primary customers for the

parties' Italian Breads are retail food outlets such as grocery stores and restaurants, and the distributors and jobbers who serve them. These customers have specific needs for various kinds of Italian Breads, for which other breads are not a reasonable substitute. Other types of breads are not reasonably exchangeable with Italian Breads and do not constrain the price of Italian Breads. A small but significant increase in the price of Italian Breads above competitive levels would not cause consumers to switch to other breads in sufficient numbers to make the price increase unprofitable.

16.    There are significant barriers to entry to the Italian Breads market because of the time and expense of locating a manufacturing site, obtaining the requisite government approvals, building an efficient production facility, the necessity of economies of scope and scale (including the development of an elaborate and reliable distribution network), establishing a reputation for quality and reliability, and attracting and building a customer base.

17.    The Italian Breads market is inherently localized. Italian Breads are highly perishable and their quality is largely dependent on freshness. Many customers, such as restaurants and delis, require daily delivery of fresh bread. The contours of the geographic market are dependent on transportation time and costs, the number and location of available distributors, and the concentration of large customers in a given area to lower the relative distribution costs. The greater the distance the product must travel to reach the customer, the higher the risk of losing quality and increasing the costs of transportation, especially in the congested New York metropolitan area. Additionally, distributing across a long distance makes it more difficult to effectively compete with other bakeries that are closer to a given customer, enjoy easier and cheaper transportation

6

routes, or have a more effective distribution network.

18.    The relevant geographic market for Italian Breads for the purposes of this lawsuit is the area comprising the County of Fairfield, Connecticut, and the Counties of Westchester, Bronx, New York, Kings, Queens, and Nassau in New York.  Due to the high cost of transportation in the New York metropolitan area, which includes numerous bridge and other highway tolls, as well as the high volume of traffic and congestion, competitors from outside this geographic area cannot effectively compete in this New York-Connecticut market.   In addition, there are relevant geographic submarkets within the relevant market, where Cassone is able to exercise market power.

## FACTUAL ALLEGATIONS

### The Premises

19.    For many years and at all times relevant to the claims herein, Plaintiff Neri's Bakery operated on two parcels of land in the Village of Port Chester, New York: 31-37 Pearl Street and 61 Pearl Street.  The two parcels are separated from each other by a single lot—41 Pearl Street.

20.    For many years and at all times relevant to the claims herein, Cassone has operated its bakery business less than a mile away at 202 South Regent Street, Port Chester, New York.

21.    On or about April 14, 1999, knowing that Plaintiff desired and attempted to purchase the Premises to facilitate expansion of its business, Cassone purchased the Premises for approximately $750,000.

22.    When Cassone made this purchase, it had no intention of operating any of its bakery business on the Premises amidst its closest competitor's operations.  Cassone

7

had no legitimate business or other purpose for purchasing Premises other than to interfere with Plaintiff's business and prevent competition from the Plaintiff.

23.    Cassone purchased the Premises in order to (i) prevent Plaintiff from expanding its operations to profitably and efficiently manufacture bakery products, and (ii) use its control over the Premises to induce any potential purchaser of the Premises to agree to an anticompetitive restrictive covenant, so that Cassone would maintain an extortionary tool to force Plaintiff to exit the Italian Breads market.

24.    Subsequent to its purchase of the Premises, Cassone did not use the Premises for any purpose, did not build any structures on the Premises, and did not maintain the grounds.  In short, Cassone paid a substantial purchase price, along with taxes and interest, with no intention of actually using the Premises.  The sole purpose of this purchase was to prevent competition from Plaintiff and to maintain artificially high prices for Italian Breads.

## The Restrictive Covenant

25.    Upon information and belief, on or about November 12, 2003, Cassone sold the Premises to 41 Pearl Street for approximately $750,000—the same price Cassone paid for the Premises four years earlier.  As part of the sale, Cassone and 41 Pearl Street agreed to a restrictive covenant on the Premises, which provides as follows:

> This conveyance is further SUBJECT to the following covenant and restriction, and the party of the second part, by its acceptance of the deed, on behalf of itself and its devisees, heirs, successors and/or assigns as subsequent owners of the premises hereby conveyed, does hereby covenant and agree as follows: *that for a period of fifty (50) years following the date of this deed, the premises hereby conveyed shall not be used as a bakery or for any purpose related or ancillary to a bakery*, including, without limitation, a bakery or kitchen facility, a bakery delivery truck storage facility, a baked goods distribution facility, a baked goods retail store and/or a baked goods wholesale store.  The foregoing covenant and restriction shall attach to the

premises hereby conveyed and shall remain in effect for the period expiring on the date that is the fiftieth (50th) anniversary of the date of this deed, and until the same shall so expire, said covenant and restriction shall constitute a covenant running with the land, binding upon the party of the second part and its devisees, heirs, successors and/or assigns as subsequent owners of the premises hereby conveyed (and the tenants, subtenants and licensees thereof) and *said covenant and restriction is made for the benefit of, and shall be enforceable by, [Cassone]* and such party's devisees, heirs, successors and/or assigns, as owner (and the tenants, subtenants and licensees thereof) of those certain bakery premises located in the village of Port Chester, Town of Rye, County of Westchester and State of New York, commonly known as and by the street number 202 South Regent Street, which bakery premises are currently owned by the party of the first part and which are in the vicinity of the premises being converted by this deed. (Emphasis added).

26.    The sole purpose of this covenant was to prevent Neri's Bakery, which owned the land on both sides of the Premises, from expanding its baking operations and connecting its two disjointed parcels of land into one efficient bakery operation.

27.    By inducing 41 Pearl Street to agree to this restrictive covenant limiting the permissible uses of the Premises, Cassone intentionally reduced the value of the property by decreasing the number of likely buyers. Again, Cassone insisted on this condition of the agreement, which reduced the value of the property, because it knew that it would recoup the lost value in the purchase price by maintaining artificially higher bread prices.

### Neri's Bakery's Purchase of the Premises

28.    On or about September 27, 2006, Plaintiff (through an affiliate) purchased the Premises so that it could expand its bakery operations.

29.    Subsequent to its purchase of the Premises, Plaintiff began using the property as its corporate offices, pending construction converting the Premises for use in the production of specialty breads.

### Cassone's Efforts to Enforce the Restrictive Covenant

30.    Cassone has at all relevant times refused to release Plaintiff from the restrictive covenant that it agreed to with 41 Pearl Street. Neri's Bakery offered Cassone

a deposit of $1 million and $300,000 per year for ten years to release the restrictive covenant on the land. However, Cassone refused Plaintiff's offer.

31.   In December 2006, Plaintiff and its affiliate Neri's Land Improvement, LLC commenced an action in the New York Supreme Court, Westchester County, to extinguish the restrictive covenant pursuant to New York's Real Property Actions and Proceedings Law § 1951 alleging that the restrictive covenant (1) provides no actual or substantial benefit to Cassone and (2) if enforced, would cause Plaintiff to conduct certain bakery operations at other locations and cause significant harm. Plaintiff and its affiliate also alleged that Cassone's conduct was anticompetitive and that Cassone had conspired with 41 Pearl Street to restrain competition in violation of New York's Donnelly Act. Plaintiff could not and did not raise a Sherman Act claim in this action because the New York courts would not have had subject matter jurisdiction over such a claim.

32.   In February 2007, Cassone countersued, seeking specific performance and injunctive relief against Plaintiff's affiliate in order to enforce the restrictive covenant.

33.   On December 10, 2007, the New York Supreme Court dismissed, without prejudice, the action to extinguish the restrictive covenant for failure to state a claim, and on April 14, 2008, it granted Cassone specific enforcement and a permanent injunction.

34.   On appeal from both orders, on September 29, 2009, the Appellate Division affirmed, specifically holding that "the evidentiary material submitted by the parties in connection with the motion to dismiss, establish that the restrictive covenant clearly is of a substantial benefit to Cassone inasmuch as *the restrictive covenant prevents competition by another bakery business at the premises*, which is located less than a mile away from Cassone's bakery business." *Neri's Land Improvement, LLC v. J.J. Cassone Bakery, Inc.*, 2009 NY Slip Op 06817, at *2 (Sept. 29, 2009) (emphasis added). Not presented with a claim under the federal antitrust laws, the Appellate Division did not invalidate the restrictive covenant or hold it unenforceable.

10

### Injury to Neri's Bakery's Business

35.    Cassone, through its (i) purchase of the Premises, (ii) unlawful agreement with 41 Pearl Street to place a restrictive covenant on the Premises that served neither entities' independent economic interests nor any legitimate business purpose, and (iii) subsequent legal enforcement of the covenant, has prevented Plaintiff from using the Premises and interfered with Plaintiff's business expansion.

36.    Plaintiff's operations in Port Chester are in or adjacent to a residential area. Zoning limitations and lack of available and appropriate land for sale prevent Plaintiff from acquiring other properties adjacent to, or in the immediate vicinity of its operations. Relocating the equipment or opening a separate facility at a different location would require duplication of capital investments, and result in increasingly complex logistics for production and delivery, customer confusion, and additional transportation costs, and therefore would be highly inefficient and cost prohibitive.

37.    The president of Cassone, Mary Lou Cassone, has repeatedly indicated to Plaintiff that she would agree to lift the restrictive covenant so that Plaintiff could use the Premises to expand its operations and increase its share in the non-Italian Breads market if, in return, Plaintiff would agree to "get out of the Italian Bread business." Plaintiff did not accept this solicitation to allocate markets because, among other reasons, to do so would have been a felony violation of the Sherman Act. If Neri's Bakery had accepted this solicitation, Cassone would have instantly achieved monopoly power in the Italian Breads market.

38.    Plaintiff has suffered injury as a direct result of Cassone's actions. As a result of the restrictive covenant and Cassone's active enforcement of it in the courts, Plaintiff has been unable to use the Premises for its bread production and to fully benefit from business opportunities. Plaintiff cannot estimate the full extent of its damages at this time, but has lost an opportunity for approximately $20-30 million in additional sales to a single existing customer alone, who was interested in expanding its purchases from

11

Neri's Bakery but could not be supplied with all of its bread needs due to Cassone's illegal scheme to restrict the output of Neri's Bakery.

## COUNT I

### (Unlawful Restraint of Trade — Sherman Act Section 1)

39.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 38, as if fully set forth herein.

40.     Defendants entered into an agreement to unreasonably restrain and eliminate competition in the local Italian Breads market by, *inter alia*, entering into an illegal agreement with 41 Pearl Street containing the restrictive covenant, agreeing to impose, and in fact imposing, the restrictive covenant on Neri's Bakery, and continuing to insist that Neri's Bakery abide by the illegal agreement with 41 Pearl Street. This agreement is illegal because it has no legitimate purpose whatsoever; its only purpose and effect is to restrict output and competition in the sale of Italian Breads, resulting in higher bread prices and fewer choices for direct and indirect purchasers of bread, including consumers.

41.     The restraints on Plaintiff's use of the Premises serve no purpose other than to increase Plaintiff's costs of operation and thereby impede its ability to expand its operations and compete effectively. The restraints serve no legitimate business reason and have no pro-competitive benefits.

42.     The conspiracy by and between Defendant Cassone and its co-conspirator 41 Pearl Street has had the effect of suppressing and eliminating competition in the market for Italian Breads, and these effects are not *de minimis* or minute but substantial and significant.

43.    The agreement by and between Defendant Cassone and its co-conspirator 41 Pearl Street to inhibit, reduce, and eliminate competition has affected and continues to affect the New York-Connecticut market, as described above, and therefore has affected and continues to affect interstate commerce.

44.    Consumers have been injured by the illegal restraint that Defendant Cassone and its co-conspirator 41 Pearl Street agreed to create and impose, and did impose, on Plaintiff, which has enabled Cassone to monopolize and force Plaintiff's exit from the Italian Breads market, which will further injure consumers by causing them to pay artificially inflated, unnecessarily high, and supra-competitive prices.

45.    As a direct result of this unlawful conspiracy and Defendant Cassone's and its co-conspirator 41 Pearl Street's anticompetitive acts in furtherance of their conspiracy, Plaintiff has been injured and will continue to be injured in its business by incurring increased costs to operate its business, by its inability to expand operations and compete effectively at the lowest possible cost in the bakery products market, and by a loss of actual and potential business, and by the loss of profits from all the above, and will be injured by its forced exit from the market for Italian Breads.

46.    Plaintiff's and consumers' injuries are the type of injuries the antitrust laws were designed to prevent, and flow from that which make Defendant Cassone's and 41 Pearl Street's conduct unlawful.

47.    Defendant Cassone's and 41 Pearl Street's antitrust violation threatens continuing loss and injury to Plaintiff and consumers unless enjoined by this Court.

## COUNT II

### (Conspiracy to Monopolize — Sherman Act Section 2)

48.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 38, as if fully set forth herein.

49.    Defendant Cassone and its co-conspirator 41 Pearl Street willfully, knowingly, intentionally, and with specific intent to do so, conspired to obtain for Defendant Cassone a monopoly in the market for Italian Breads in violation of 15 U.S.C. § 2.

50.    In furtherance of this conspiracy Defendant Cassone and its co-conspirator 41 Pearl Street willfully, intentionally, and with specific intent to do so conspired to obtain for Defendant Cassone a monopoly in the market for Italian Breads by entering into a restrictive covenant to preclude any and all competitors from competing with Cassone in the market for Italian Breads from the Premises; refusing to deal with competitors, and refusing to sell the Premises to competitors, on commercially reasonable terms; denying all competitors, including Plaintiff, the full use of and uninhibited access to a facility that is necessary for Cassone's competitors, including Plaintiff, to compete effectively in the Italian Breads market; interfering with Plaintiff's operations; attempting to exclude Plaintiff from the Italian Breads market; and/or agreeing not to deal with Plaintiff except on terms that were meant to disadvantage Plaintiff as the only realistic buyer that also operates a bakery business.

51.    The natural and probable consequences of this conspiracy and the acts in furtherance this conspiracy were to suppress, reduce, and eliminate competition in the market for Italian Breads, and these consequences were plainly foreseeable by Defendant Cassone and its co-conspirator 41 Pearl Street.

52.    The conspiracy had no legitimate business purpose. It achieved no legitimate efficiency benefit to counterbalance the anticompetitive effects in the relevant market.

53.    Defendant's conspiracy to monopolize the New York-Connecticut market, as described in paragraph 18, has affected and continues to affect interstate commerce.

54.    The conspiracy has caused, and will continue to cause, substantial effects in the market for Italian Breads. It will suppress, reduce, and eliminate competition, and thus enable Defendant Cassone to charge supra-competitive prices in the market for Italian Breads.

55.    As a direct result of this unlawful conspiracy, Plaintiff has been injured and will continue to be injured in its business by incurring increased costs to operate its business, by its inability to expand operations and compete effectively at the lowest possible cost in the bakery products market, and by a loss of actual and potential business, and will be injured by its forced exit from the market for Italian Breads.

56.    Plaintiff's and consumers' injuries are the type of injuries the antitrust laws were designed to prevent, and flow from that which make Defendant Cassone's and 41 Pearl Street's conduct unlawful.

57.    Defendant Cassone's and 41 Pearl Street's antitrust violation threatens continuing loss and injury to Plaintiff and consumers unless enjoined by this Court.

## COUNT III

### (Unlawful Attempt to Monopolize — Sherman Act Section 2)

58.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 38, as if fully set forth herein.

59.    Defendant Cassone has engaged in anticompetitive conduct by entering into, maintaining, and legally enforcing a restrictive covenant on the Premises preventing competitors from expanding their bakery businesses and interfering with competitors' operations with the intent to increase competitors' costs and force them out of the market for Italian Breads, and by soliciting an illegal agreement for Neri's Bakery to exit the Italian Breads market, which would leave Cassone with illegal monopoly power.

60.    In engaging in the conduct alleged herein, Cassone had the specific intent to monopolize the market for Italian Breads by forcing its closest competitor to exit this market.  Defendant Cassone has conditioned, and continues to condition, Plaintiff's release from the restrictions of the restrictive covenant on Plaintiff's full and complete exit from the Italian Breads market.  The natural and probable consequences of Cassone's anticompetitive conduct was and is to suppress, reduce, and eliminate competition in the market for Italian Breads, and these consequences were plainly foreseeable by Cassone.

61.    Cassone currently controls approximately sixty percent of the Italian Breads market, and therefore has a dangerous probability of achieving monopoly power in the market for Italian Breads, when it forces Plaintiff (which holds a market share of fifteen percent or less) to exit this market.

62.    Defendant Cassone's anticompetitive conduct reduces and eliminates competition in the New York-Connecticut market (as described in paragraph 18), and therefore affects interstate commerce.

63.    Consumers will be injured by Defendant Cassone's monopolization of the market for Italian Breads, which will enable it to charge even higher artificially inflated, and supra-competitive prices.

16

64. As a direct result of Defendant Cassone's anticompetitive conduct, Plaintiff has been injured and will continue to be injured in its business by incurring increased costs to operate its business, by its inability to expand operations and compete effectively at the lowest possible cost in the non-Italian Breads market, and by a loss of actual and potential business, and will be injured by its forced exit from the market for Italian Breads.

65. Plaintiff's and consumers' injuries are the type of injuries the antitrust laws were designed to prevent, and flow from that which make Defendant's conduct unlawful.

66. The violations are continuing and will continue unless enjoined by the Court.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief:

a. an injunction against Defendant ordering it to cease and desist from its unlawful conspiracy in restraint of trade, conspiracy to monopolize the Italian Breads market, and attempted monopolization of the Italian Breads market;

b. extinguishment of the restrictive covenant running with the Premises;

c. an award of the damages that Plaintiff has sustained due to the Defendant's unlawful conduct as alleged herein;

d. an award of treble damages to Plaintiff as provided by law;

e. pre-judgment interest and post-judgment interest from the date of entry until the date of satisfaction at the highest rates allowable by law;

f.      an award of reasonable attorneys' fees and costs incurred by Plaintiff in this action; and

g.      such additional relief, legal or equitable, to which plaintiff may be entitled.

### JURY TRIAL DEMANDED

Plaintiff requests a trial by jury on all issues so triable.

Armonk, New York
February 16, 2010

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

By:     *Helen M. Maher*

Helen M. Maher (HM-6379)
Olav A. Haazen (OH-7788)
333 Main Street
Armonk, New York 10504
Tel.: (914) 749-8200
Fax: (914) 749-8300
hmaher@bsfllp.com
ohaazen@bsfllp.com

*Attorneys for Plaintiff Neri's Bakery Products, Inc.*

18